IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ANTHONY LAURITA,

        Defendant.

8:13CR107

**FINDINGS AND RECOMMENDATION**

This matter is before the court on the defendant's, Anthony Laurita (Laurita), Motion to Suppress Statement (Filing No. 193). Laurita is charged in the Second Superseding Indictment with the receipt and attempted receipt of child pornography (Count I) in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) and the accessing of a computer in interstate commerce with the intent to view child pornography (Count II) in violation of 18 U.S.C. § 2252A(a)(5)(B) during the period of November 16, 2012, and December 2, 2012 (Filing No. 110). Laurita seeks to suppress statements he gave to law enforcement officers on April 9, 2013, at Laurita's place of employment.

The court held an evidentiary hearing on the motion on September 9, 2014. Laurita was present with his counsel Mark W. Bubak. The United States was represented by Assistant U.S. Attorneys Michael P. Norris and Lecia E. Wright. The court heard the testimony of Federal Bureau of Investigation (FBI) Special Agent Patrick J. Howley (Agent Howley). The court also received a copy of Agent Howley's FD-302 report of Laurita's September 9, 2014, interview (Ex. 101). The court took judicial notice of Laurita's Pretrial Services Report (Filing No. 142) and the search warrant of Laurita's Pennsylvania residence (Filing No. 222 - Ex. 28 at April 17-18, 2014, NIT suppression hearing; Filing No. 279 - Ex. 101 at September 9, 2014, severance hearing). A transcript (TR.) of the hearing was prepared and filed on October 7, 2014. **See** Filing No. 291.

**FINDINGS OF FACT**

On April 9, 2013, law enforcement officers, including Agent Howley, executed a federal search warrant at Laurita's residence located at 130 Wiggins Lane, Uniontown,

Pennsylvania, searching for evidence of child pornography (Ex. 101; TR. 4-5, 15-16). Laurita was not at home at the time of the search (Ex. 101; TR. 4-5). Various items were seized from the home, including a desktop computer system (Ex. 101; TR. 4-5).

Following the residence search, because Agent Howley wanted to inform Laurita about the search and ask questions about Laurita's former girlfriend's children, Agent Howley and FBI computer scientist Brian King (Mr. King) drove to TeleTech, Laurita's place of employment in Uniontown Mall in Uniontown, Pennsylvania (Ex. 101; TR. 5-6, 19-20). A security officer and human resources employee directed Agent Howley and Mr. King to a conference room to meet with Laurita (TR. 7-9). The room was approximately twenty-feet by twenty-feet with a conference table and four chairs (TR. 9, 27). A few minutes later, Laurita joined Agent Howley and Mr. King in the room (TR. 9). Agent Howley and Mr. King sat facing the door to the room and across from Laurita (TR. 27-28). Agent Howley informed Laurita the FBI executed a search warrant at Laurita's grandmother's home, apologized for contacting Laurita at work because Agent Howley did not want to jeopardize Laurita's employment, and explained the meeting would only take ten or fifteen minutes (TR. 10). Agent Howley explained the search was related to an internet-based child pornography matter, which Laurita acknowledged (TR. 11-12). Laurita stated he has been looking at child pornography for approximately a year (TR. 12-13, 33, 45-46). Agent Howley asked Laurita whether Laurita "laid hands" on Laurita's former girlfriend's two children, as it related to his interest in the material viewed on the internet (TR. 12, 20). Laurita denied ever acting on his interests with the children (TR. 12-13). Agent Howley also briefly discussed "The Onion Router" with Laurita (TR. 21). At the conclusion of the interview, Agent Howley told Laurita not to stop working and encouraged Laurita to seek counseling as it may appear favorable in the eyes of the court (TR. 11, 15, 23-24). Laurita returned to work following the interview (TR. 15).

Agent Howley spoke with Laurita for approximately fifteen minutes and "absolutely no more than 20 minutes" (TR. 10). Mr. King did not ask any questions during the interview (TR. 31). Only Agent Howley, Mr. King, and Laurita were in the room (TR. 10). The door to the room was closed during the interview (TR. 23, 27, 42-43). Agent Howley testified the tone of the meeting was conversational, no one raised

his voice during the interview, and Agent Howley did not use any strong-arm tactics or ruses during the interview (TR. 10-11, 14, 46-47). Agent Howley also testified Laurita's movement was not restricted and Agent Howley did not position himself in a way to prevent Laurita's movement (TR. 14). Laurita did not ask to leave during the interview, indicate he wanted to terminate the interview, or ask for anyone to join him in the room (TR. 36). Agent Howley testified he did not advise Laurita of Laurita's *Miranda* rights (TR. 25, 43).

Following the interview, Agent Howley completed a report (TR. 28; Ex. 101). Agent Howley admitted he did not include every detail of the interview in the report, such as whether Laurita was free to move around the room or whether he told Laurita the interview was voluntary and Laurita was not under arrest (TR. 28-31). Agent Howley also admitted, although Laurita wore clothing during the interview, Agent Howley did not include such information in his report (TR. 35-36). Agent Howley testified the purpose of the report was to "memorialize and document the significant facts and statements made during the interview, not to be a verbatim . . . transcript of the interview itself" (TR. 36).

Laurita is thirty-three years old and has an associate's degree in graphic design (TR. 40; Filing No. 142 - Laurita's Pretrial Services Report). In 2009, Laurita was charged for possession of drug paraphernalia (TR. 40). Law enforcement interviewed Laurita in connection with that charge (TR. 40). Laurita testified Agent Howley spoke in a conversational tone and had a soft-spoken, nice demeanor while Mr. King's body language was aggressive (TR. 43). Laurita testified the interview was around twenty minutes (TR. 44). With the exception of where everyone sat in the conference room, Laurita testified he did not disagree with Agent Howley's suppression hearing testimony (TR. 47). Laurita testified he sat at the head of the table between Agent Howley and Mr. King and Agent Howley was closest to the door (TR. 43-44).

## ANALYSIS

Laurita argues the court should suppress his statements made during the April 9, 2013, interview because he was subjected to a custodial interrogation. **See** Filing No. 194 - Brief p. 6-7; TR. 49-54. Laurita contends the interrogation occurred at his work, in

3

a small room secluded from colleagues, and he was not advised of his *Miranda* rights. *Id.* Laurita also contends Agent Howley questions "about the two children of [Laurita's] former girlfriend, suggests that a reasonable person could interpret the these remarks as requiring him to confess before the officers left to avoid additional legal trouble" and are similar to implied threats. *Id.*

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda* rights before questioning if that individual is in custody. ***United States v. Williams***, 760 F.3d 811, 814 (8th Cir. 2014). "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." ***Williams***, 760 F.3d at 814 (internal quotation marks omitted). Whether an individual was in custody is an objective inquiry and a court considers the totality of the circumstances that confronted the individual. **See *J.D.B. v. North Carolina***, 131 S. Ct. 2394, 2402 (2011); ***Williams***, 760 F.3d at 814.

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. . . . [T]he court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

***J.D.B.***, 131 S. Ct. at 2402 (**quoting *Thompson v. Keohane***, 516 U.S. 99, 112 (1995)); **see also *United States v. Diaz***, 736 F.3d 1143, 1148 (8th Cir. 2013). The Eighth Circuit has identified the following six non-exclusive factors to consider when determining whether an individual is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning

>was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Diaz*, 736 F.3d at 1148-49 (**quoting** *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Lowen*, 647 F.3d 863, 867 (8th Cir. 2011) (**quoting** *United States v. Czichrary*, 378 F.3d 822, 827-28 (8th Cir. 2004); **see also** *United States v. Perrin*, 659 F.3d 718, 720 (8th Cir. 2011) ("*Griffin* is simply a rubric for considering the ultimate issue, not a mandatory checklist."). From this principal it follows that the presence or absence of any one factor is not determinative on the issue. **See** *Griffin*, 922 F.2d at 1347. Instead, a court must "examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Id.* (**quoting** *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). "The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." *Williams*, 760 F.3d at 814-15 (**quoting** *Griffin*, 922 F.2d at 1349). "The fact that an investigation may be said to have focused on a particular person does not necessarily make questioning custodial." *United States v. Rorex*, 737 F.2d 753, 755 (8th Cir. 1984).

After considering the totality of the circumstances, the court finds Laurita was not in custody during the April 9, 2013, interview. While Agent Howley did not specifically state Laurita was not under arrest or the interview was voluntary, Agent Howley did state the interview would be brief because Laurita was at work and Agent did not want to jeopardize Laurita's employment. Regardless, those factors are not solely determinative of custody. The interview, at most, was twenty minutes and was at Laurita's place of employment, a familiar surrounding for Laurita. **See** *Rorex*, 737 F.2d at 756 (finding, in part, a suspect was not in custody because the interview was at the suspect's place of business, or "on his own turf"). The fact the interview occurred in a small conference room is not indicative of custody in this instance. There is no

evidence Agent Howley selected the room to intimidate Laurita. The interview occurred in a room away from Laurita's colleagues out of concern for Laurita's privacy and employment. Although Agent Howley initiated contact with Laurita, Laurita voluntarily agreed to speak with Agent Howley. Laurita was not handcuffed or otherwise restrained in any significant way, there is no indication Agent Howley blocked Laurita's exit, and the atmosphere was not police dominated. **See *United States v. Axsom***, 289 F.3d 496, 502-03 (8th Cir. 2002) (finding there was not a police dominated atmosphere when two agents conducted questioning while seven agents searched a small house). Further, neither Agent Howley nor Mr. King employed strong-arm tactics or deceptive stratagems during the interview. Also, Laurita was not arrested at the conclusion of the interview and returned to work. A "reasonable person" in Laurita's position would have felt free to leave the room prior to or during the interview. Even assuming Laurita was interrogated, the protections of *Miranda* do not apply because Laurita was not in custody. **See *United States v. Kelly***, 329 F.3d 624, 630 (8th Cir. 2003) (stating that a defendant who "was not subject to custodial interrogation . . . was not entitled to the protections of *Miranda*").

To the extent Laurita challenges the voluntariness of his statements, the court finds his statements were voluntary. The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278 (1936). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." ***United States v. Perry***, 714 F.3d 570, 574 (8th Cir. 2013) (**quoting *United States v. LeBrun***, 363 F.3d 715, 724 (8th Cir. 2004)). "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" ***United States v. Vega***, 676 F.3d 708, 718 (8th Cir. 2012) (**quoting *United States v. Boslau***, 632 F.3d 422, 428 (8th Cir. 2011)). Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." ***United States v. Wallace***, 713 F.3d 422, 426 (8th Cir. 2013) (**quoting *Vega*, 676 F.3d at 718). It is the government's burden to "prove by a preponderance of

the evidence that the challenged statements were voluntary." *Boslau*, 632 F.3d at 429 (**quoting** *LeBrun*, 363 F.3d at 724).

There is no evidence Agent Howley made any threats or promises sufficient to overbear Laurita's will and critically impair his capacity for self-determination. Further, there is no evidence Agent Howley's questions regarding Laurita's former girlfriend's children were an implied threat as Laurita contends. Agent Howley's questions were motivated by his concern for the children. **See** TR. 14-15; 19-20. The interview was only fifteen to twenty minutes long. **See** *United States v. Muhlenbruch*, 634 F.3d 987, 998 (8th Cir. 2011) (noting the significance of the fact that the defendant was interviewed at a police station for a "mere twenty-two minutes" in finding the defendant's confession was voluntary). Agent Howley spoke to Laurita in a conversational tone and did not raise his voice. Laurita is educated and has had prior experience in an interview setting with law enforcement. Additionally, Laurita testified he agreed with Agent Howley's description of the interview and did not state he felt threatened or coerced to make any statements. Accordingly, the totality of the circumstances indicate Laurita's statements were voluntary. Upon consideration,

**IT IS RECOMMENDED TO SENIOR DISTRICT JUDGE JOSEPH F. BATAILLON** that Laurita's Motion to Suppress Statement (Filing No. 193) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 15th day of October, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge